**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KARL KNAPP,

      Applicant,

vs.                                                      Civil No. 07-834 MCA/RHS

JAMES JANECKA, et al.,

      Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before the Court upon Applicant's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody ("Petition"), filed August 24, 2007 **[Doc. No. 1]** and Respondents' Motion to Dismiss Petition ("Motion"), filed October 23, 2007 **[Doc. No. 15]**.  Applicant, Karl Knapp, who is confined pursuant to the Judgment, Sentence and Commitment of the Second Judicial District Court of Bernalillo County, New Mexico, is proceeding *pro se* and *in forma pauperis*.  (See Ex. A, attached to Answer[1], filed Oct. 11, 2007 **[Doc. No. 13]**).

    2.  On August 12, 2004, following a jury trial, Applicant was convicted of two counts of First Degree Murder, one count of Second Degree Murder, one count of Aggravated Burglary, six counts of Aggravated Assault, one count of Shooting at a Dwelling or Occupied Building, one count of Aggravated Stalking, one count of Tampering with Evidence, four counts of Use of Telephone to Terrify, Intimidate, Threaten, Harass, Annoy or Offend, and one count of Possession of a Controlled Substance.  (See id. at 1-3).  Applicant was sentenced to serve a total

---

    [1]All exhibits cited in this document are attached to Respondents' Answer.

term of incarceration of seventy-six (76) years.  (See id. at 4).  On August 17, 2006, the New Mexico Supreme Court affirmed Applicant's judgment and sentence on appeal.  (See Ex. H).  On May 15, 2007, Applicant filed a Petition for Writ of Habeas Corpus in state district court (see Ex. J), which was denied the same day (see Order on Petition for Writ of Habeas Corpus ("Order"), Ex. K).  On June 25, 2007, the New Mexico Supreme Court summarily denied Applicant's Petition for Writ of Certiorari regarding the denial of his state habeas corpus petition.  (See Ex. M).

      3.   In his Petition, Mr. Knapp raises the following claims:  (I) Ineffective Assistance of Counsel, (II) Prosecutorial Misconduct, (III) Failure to Present Diminished Capacity Defense/Instruction, and (IV) Trial Court Error/Judicial Bias.  The Government argues that Mr. Knapp's Petition should be denied and this case dismissed because Mr. Knapp "has failed to establish any federal constitutional violation based on the applicable standards of review set forth in 28 U.S.C. § 2254(d) and (e)."  (Motion at 16).

**Standard of Review**

      4.   Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a state court has decided issues on the merits, a federal court may grant habeas relief only if an applicant can show that the State court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  In addition, "the determination of a factual issue made by a State court shall be presumed to be correct" and an applicant has "the burden of rebutting the

presumption of correctness by clear and convincing evidence." § 2254(e)(1).

**Factual Background[2]**

5.  Mr. Knapp and Jane Johnston were involved in a contentious two-year relationship. On the evening of December 31, 2002, Mr. Knapp called Ms. Johnston at home and threatened to kill her.  (See Appellant's Brief-in-Chief ("Brief") at 11, Ex. E).  On January 3, 2003, Mr. Knapp allegedly made a series of telephone calls to Ms. Johnston's workplace,[3] demanding to speak with her.   Later that afternoon, Mr. Knapp arrived at Ms. Johnston's workplace with a pistol.  Mr. Knapp entered the manufacturing area of the business, fired several shots into the ceiling and told employees to get down on the ground.  Two employees testified that after Mr. Knapp left the area, they heard gunshots from the front office of the building.  The owner of the business, Steve Goodwin, was found shot to death in the office.  There were no witnesses to his death.

6.  Ms. Johnston left the workplace and went to a nearby business;[4] Mr. Knapp also entered the nearby business.  Several people in the business heard an argument involving a man and a woman and several gunshots.  Witnesses saw Ms. Johnston fall to the ground and saw a man walk out the front door.  An employee, Greg Maguire,[5] struggled with Mr. Knapp just outside the business and was shot in the chest.  Ms. Johnston and Mr. Maguire died of their

---

[2]Unless otherwise noted, the factual background is taken from the Statement of the Issues that Mr. Knapp submitted to the New Mexico Supreme Court ("NMSC") in support of his direct appeal.  (See Ex. C).

[3]Ms. Johnston worked at "Posh Limited."  (Brief at 13).

[4]Several witnesses "saw Ms. Johnston running out of Posh Limited."  (Brief at 13).

[5]Mr. Maguire was an employee of the nearby business, "Poulin's."  (Brief at 15).

wounds.  Mr. Knapp walked several blocks to a third business, Cash Pawn Jewelry and Loan ("Cash Pawn"), and barricaded himself inside.[6]  Several hours later, police officers entered Cash Pawn to arrest Mr. Knapp after he shot himself.  Mr. Knapp was taken to the hospital and eventually transferred to the county jail.

      7.  Police officers found a "semiautomatic 9 millimeter Bryco Jennings pistol loaded with one clip containing 9 cartridges in Cash Pawn."[7]  (Brief at 16 (citation omitted)).  "The owner of Cash Pawn said that he did not carry any Bryco firearms."  (Id.).  "The seven fired cartridge casings from the area of Posh Limited and Poulin Design and Remodeling and the two fired cartridges found in Cash Pawn were fired by the Bryco Jennings 9 millimeter firearm found at Cash Pawn.  The bullet recovered from Steve Goodwin's body, and two other bullets from near Posh and Poulin's, had been fired by that same pistol."  (Id. at 17 (internal citations omitted)).

**Discussion**

*Claim III - Failure to Present Diminished Capacity Defense/Instruction*

      8.  In his Petition, Mr. Knapp asserts that "the jury was never provided with intoxication jury instructions as provided for in the" uniform jury instructions and thus, "was never informed as they [sic] should have been that intoxication, being under the influence of a controlled substance[,] and defendant's mental status could reduce the degree of offense."  (Petition at first hand-numbered page "1" immediately following page 9).  Mr. Knapp's allegation that the jury received *no* instructions regarding intoxication is contradicted by the record.  In affirming his

---

      [6]At least two witnesses saw Mr. Knapp walk away holding a gun.  An employee at Cash Pawn also said that Mr. Knapp had a gun.  (See Brief at 16).

      [7]An empty magazine that fit the Bryco pistol was found nearby.  (See Brief at 16).

judgment and sentence on direct appeal, the NMSC found that "[t]he district court judge gave the jury instructions on intoxication with regard to the murder and aggravated burglary charges, but denied Defendant's request for a similar instruction with regard to the aggravated stalking charge."  (Appeal from the District Court of Bernalillo County, Decision ("Decision") at 12, Ex. H).[8]

    9. The NMSC further concluded that the state district court did not err in denying Mr. Knapp's proposed intoxication instruction for the aggravated stalking charge.  The NMSC noted that during the time period relevant to the aggravated stalking charge, Mr. Knapp "consumed fewer than four beers . . . . [and] [t]here was no evidence that . . . [he] consumed any other intoxicants."  (Decision at 15).  Having reviewed the evidence presented at trial in the context of New Mexico state law regarding intoxication and diminished capacity instructions,[9] the NMSC agreed with the state district court that "there was insufficient evidence of intoxication to warrant an intoxication instruction for the aggravated stalking charge."  (Decision at 13).

    10. In denying Mr. Knapp's state habeas petition, the district court found that "the levels of intoxication testified to clearly did not rise to the level of providing a defense."  (Order on

---

[8]Some of the proposed jury instructions submitted by Mr. Knapp have nothing to do with intoxication.  (See Jury Instructions, attached to Reply to Respondents Answer, filed Oct. 31, 2007 **[Doc. No. 17]**).  In any event, they are evidence only of proposed instructions that were "denied" by the court and fail to rebut the finding of the NMSC that the trial court instructed the jury on intoxication with respect to murder and aggravated burglary charges.

[9]The NMSC explained that to support an instruction on intoxication, "the record must contain some evidence showing or tending to show that defendant consumed an intoxicant and the intoxicant affected his mental state at or near the time of the [specific intent crime]."  (Decision at 13 (quoting State v. Privett, 717 P.2d 55, 58 (NMSC 1986)).  Moreover, "mere evidence that the defendant consumed an intoxicant is not enough," State v. Romero, 1998-NMCA-057, ¶ 26, rather, "the evidence as to intoxication must be substantial," State v. Williams, 417 P.2d 62, 67 (NMSC 1966).

Petition for Writ of Habeas Corpus at unnumbered page 2, Ex. K (emphasis in original)).  As previously noted, the NMSC summarily denied Mr. Knapp's petition for writ of certiorari regarding the district court's denial of his state habeas petition.

11.  This Court concludes that the New Mexico state courts' determinations were neither contrary to nor unreasonable applications of clearly established federal law, nor were they based on unreasonable determinations of the facts in light of the evidence presented.  Accordingly, Mr. Knapp's request for federal habeas relief should be denied on this claim.

*Claim I - Ineffective Assistance of Counsel*

12.  To establish ineffective assistance of counsel, Mr. Knapp must make a two-pronged showing:  (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

13.  To prove deficient performance, Mr. Knapp must overcome the presumption that counsel's conduct was constitutionally effective.  Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998).  Scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight.  Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995).  In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).  To prevail on the prejudice prong, petitioner "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

14. In his state habeas petition, Mr. Knapp asserted that his counsel was ineffective for a variety of reasons. In denying his petition, the state district court concluded that Mr. Knapp's claim of ineffective assistance of counsel was "groundless." (Order at unnumbered page 2, Ex. K). Having "observed all the pre-trial preparation and the entire trial[,]" the state court found that Mr. Knapp's counsel "did a very good job in light of the reality that all of the facts were against him." (Id. (emphasis in original)). This Court does not find the state court's conclusion to be unreasonable or contrary to clearly established federal law.

15. Mr. Knapp primarily argues that his counsel was ineffective because he "fail[ed] to present any sort of defense on defendant's behalf, relying solely on the Prosecution's presentation and theory of the case." (Petition at 6). However, Mr. Knapp's allegation that his counsel failed to present intoxication as a defense lacks merit. As the Government points out, while defense counsel unsuccessfully sought an intoxication instruction with respect to the aggravated stalking charge, he did succeed in obtaining such an instruction regarding other specific intent crimes.[10] Moreover, at the same time Mr. Knapp alleges that his counsel was ineffective for failing to raise an intoxication defense, he criticizes his counsel for telling the jury that "Karl Knapp was an alcoholic and drug user." (Petition at 6).

16. Mr. Knapp also alleges that his counsel was ineffective for failing to solicit expert testimony on toxicology, failing to call various exculpatory witnesses, and failing to allow Mr. Knapp to testify at trial. In denying his state habeas petition, the state district court concluded

---

[10]The jury found Mr. Knapp guilty of the lesser-included offense of second degree murder on the murder charge related to Mr. Maguire.

that while Mr. Knapp "suggests several possible defenses to be explored, the evidence against him was overwhelming and <u>nothing</u> about his behavior suggested that he was in any way impaired." (Order at unnumbered page 2 (emphasis in original)). The Government argues that expert testimony on intoxication was not required because "it is well recognized that laymen are capable of assessing the effects of intoxication as a matter within their common knowledge and experience." <u>Privett</u>, 717 P.2d at 58. Thus, to the extent that defense counsel decided not to present expert testimony on this issue, Mr. Knapp fails to show that such a decision was constitutionally deficient conduct.

17. Finally, the Court finds Mr. Knapp's allegations that his counsel was ineffective because he failed to call various witnesses and did not allow him to testify are so vague, conclusory and speculative that they fail to state a claim. Mr. Knapp does not explain what testimony the proposed witnesses would present. Moreover, even assuming error on the part of counsel, Mr. Knapp fails to demonstrate a reasonable probability that, but for such errors, the result of the state criminal proceeding would have been different.

18. This Court concludes that the New Mexico state courts' rejection of Mr. Knapp's claim that his counsel rendered ineffective assistance was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on unreasonable determinations of the facts in light of the evidence presented. Accordingly, Mr. Knapp's request for federal habeas relief should be denied on this claim.

    *Claim II - Prosecutorial Misconduct*

19. Mr. Knapp alleges that "the prosecution prejudiced the jury with false evidence, [and/or] . . . perjured testimony . . . ." (Petition at hand-numbered page 1 immediately following

page 7). The state habeas court rejected Mr. Knapp's claim of prosecutorial misconduct, explaining that it "saw no indication of prosecutorial misconduct – the state performed well within all bounds of propriety." (Order at unnumbered page 2). This Court finds nothing unreasonable in the state court's conclusion. Even assuming the truth of Mr. Knapp's allegations, they fail to state a claim of prosecutorial misconduct. The statements that Mr. Knapp cites as examples of "perjury" and "false evidence" appear to be excerpts from the prosecutor's opening and closing statements setting out the state's theory of the case. Finally, even assuming the impropriety of the challenged statements, nothing indicates that they were sufficiently egregious to render the trial fundamentally unfair.

20. This Court concludes that the New Mexico state courts' rejection of Mr. Knapp's claim of prosecutorial misconduct was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on unreasonable determinations of the facts in light of the evidence presented. Accordingly, Mr. Knapp's request for federal habeas relief should be denied on this claim.

*Claim IV - Trial Court Error / Judicial Bias*

21. Mr. Knapp raised this allegation of error in his petition for state habeas relief. Although the state district court and the NMSC both denied Mr. Knapp's state petition, neither court discussed its reasons for rejecting this claim. Nevertheless, this Court "must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999). Here, Mr. Knapp appears to allege that

the state trial court was biased against him based on several adverse rulings.  However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (citing <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 583 (1966)).

      22.  Based on the record before it, this Court concludes that the New Mexico state courts' rejection of Mr. Knapp's claim of trial court error / judicial bias was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on unreasonable determinations of the facts in light of the evidence presented.  Accordingly, Mr. Knapp's request for federal habeas relief should be denied on this claim.

### Recommended Disposition

The Court recommends that Respondents' Motion be granted, that Mr. Knapp's Petition be denied and this civil proceeding be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1).  Within ten (10) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE